UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                           :

OKECHUKWU AKOMA,                   :

                           :

                  Plaintiff,  :

                           :            23-CV-10181 (VSB)

       - against -         :

                           :         **OPINION & ORDER**

NEW YORK CITY HEALTH AND    :

HOSPITALS CORPORATION, BELLEVUE  :

HOSPITAL CENTER CATHETER LAB,   :

                           :

                Defendants.  :

                           :
--------------------------------------------------------X

<u>Appearances</u>:

Robert Michael Fox
Susan Lori Adler
The Law Offices of Robert M. Fox
New York, NY
*Counsel for Plaintiff*

Zachary Ellis
New York City Law Department
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Okechukwu Akoma ("Plaintiff" or "Akoma") brought this action against New York City Health and Hospitals Corporation and the Bellevue Hospital Center Catheter Lab asserting claims under 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-101, *et seq.*, for discriminatory treatment, retaliation, and hostile work environment based on race and disability.

Before me is Defendants' motion to dismiss the Amended Complaint, (Doc. 27 ("Am. Compl.")), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 36.)  For the reasons articulate below, Defendants' motion is GRANTED, and Plaintiff's Amended Complaint is DISMISSED with prejudice as to its federal claims and DISMISSED without prejudice as to its state and city law claims against Defendant New York City Health and Hospitals Corporation, with leave to refile in state court.

## I.    **Background**[1]

Plaintiff is an African and Black man who worked in the Bellevue Hospital Catheter Lab (the "Catheter Lab")—"which is controlled and operated by" the New York City Health and Hospitals Corporation ("HHC")—from August 2020 to October 17, 2022.  (Am. Compl. ¶¶ 10, 38.)  Prior to working in the Catheter Lab, Plaintiff worked in the emergency room at Bellevue Hospital.  (*Id.* ¶¶ 11–12.)  In November 2018, while working in the emergency room, Plaintiff was attacked by a patient and went "on disability for about a year" as a result of the

---

[1] The facts in this section are based upon the factual allegations set forth in the Amended Complaint and the documents about "which plaintiffs had knowledge and relied on in bringing suit."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).  I assume the well-pleaded allegations in the Amended Complaint to be true in considering the motion to dismiss pursuant to Rule 12(b)(6).  *See USAA Cas. Ins. v. Permanent Mission of Republic of Namib.*, 681 F.3d 103, 105 n.4 (2d Cir. 2012).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such finding.

injuries he sustained from the attack.  (*Id.* ¶ 12.)  Even though he later returned from disability leave, Plaintiff could not return to his previous role because "he was not cleared to do heavy lifting" and "needed to wear a collar."  (*Id.*)  Instead, Plaintiff began working in the Catheter Lab as a staff nurse in August 2020.  (*Id.* ¶ 13.)

Plaintiff "was the only Black employee (other than Dave Powell) working [in] the lab at that time."  (*Id.* ¶ 15.)  Plaintiff's coworkers in the Catheter Lab are "predominantly Asian or Caucasian."  (*Id.*)  "During discussions with Dave Powell, he constantly referenced the fact that [Plaintiff] was Black and compared him to 'Kenny.'  'Kenny' was another Black nurse who had worked for the department and, on information and belief, been forced to leave due to harassment and discriminatory conduct by Defendants."  (*Id.* ¶ 16.)

"[HHC] and [the Catheter Lab] had a custom and practice of discriminating and retaliating against Black employees and creating a hostile environment for them."  (*Id.* ¶ 17.)  On January 14, 2021, Rafael Rivera[2] told Plaintiff to use his "street voice."  (*Id.* ¶ 23.)  On another occasion, a supervising nurse named "Melrene" "and Dave Powell singled out Plaintiff for wearing sweats although each nurse had a sweater and coat on," including "Olga (a white nurse) [who] was wearing a fuzzy sweater but was not reprimanded, written up, disciplined or sent to 'sterility class.'"  (*Id.* ¶ 19.)  Melrene would also speak in a different language to other Asian nurses in Plaintiff's presence, including "intentionally giving further instructions in a language plaintiff did not understand."  (*Id.* ¶ 30.)

Defendants also treated Plaintiff differently than Inna Kim, an Asian employee, who also worked in the Catheter Lab.  "The Hospital provided lead suits to nurses working in the lab, which was intended to protect them from radiation.  Plaintiff was fitted for his lead suit the same

---

[2] Neither Rivera's role or position is described in the Amended Complaint.

day as Inna Kim.  Kim received her lead suit after only four months of working in the lab.  Dave Powell informed Plaintiff that he needed to work eight months to receive his suit."  (*Id.* ¶ 31.)  Plaintiff never received his lead suit.  (*Id.* ¶ 32.)

The orientation process, in particular, had a "policy and practice" of discrimination based on race and national origin.  (*Id.* ¶ 24.)  During his orientation process in January and February of 2021, Plaintiff's preceptor Sonia would "avoid working with him, did not contact him[,] or provide assistance."  (*Id.* ¶ 26.)  Plaintiff complained to his supervisor Mel DeChavez, but was told that he would not be given any additional help and that, "we don't do that."  (*Id.* ¶ 27.)  Furthermore, Plaintiff was not given proper evaluations during orientation.  (*Id.* ¶ 28.)  This is in contrast to non-Black employees who were given assistance upon request and evaluations.  (*Id.* ¶¶ 27–28.)

Plaintiff was not the only Black employee who suffered discrimination during the orientation process, which was "part of a hostile environment" where Defendants had a "custom and policy of sabotaging [B]lack employees."  (*Id.* ¶ 29.)  For example, Cekeina Barttell, a former employee, is another example of a Black employee who suffered discrimination during the orientation process.  (*Id.* ¶ 24.)  In 2020, Barttell complained to Dave Powell that her preceptor Olga was ignoring her and did not provide her with any help; but Barttell's complaint went unanswered.  (*Id.* ¶ 25.)  Nor did Barttell receive the proper evaluations during her orientation.  (*Id.* ¶ 28.)  Barttell was also subject to racial discrimination by Rafael Rivera, who provided opportunities to non-Black employees such as an Asian nurse named "Rodney."  (*Id.* ¶¶ 25, 34.)  Indeed, Powell stated to Plaintiff that previous Black employees, including Barttell and Kenny, "had similar experiences to Plaintiff and had a rougher time."  (*Id.* ¶ 33.)

Plaintiff's complaints were met with retaliation by his supervisors. In January 2021, a patient told Plaintiff that other members of the Catheter Lab staff were "talking shit" about Plaintiff. (*Id.* ¶ 18.) Plaintiff complained about this incident as well as a lack of support to his supervisors, including Mel DeChavez. (*Id.*) Plaintiff also complained in April 2021 about discriminatory practices to his supervisors. (*Id.* ¶ 20.) Rather than acting on his complaints, DeChavez and Rosemary Rogers[3] responded to his complaint by telling Plaintiff "to resign or be terminated." (*Id.* ¶ 20.) Even though Plaintiff did not resign, his employment was not terminated then because, as Plaintiff learned later, DeChavez and Rogers were told by the Assistant Director of Nursing that they could not terminate Plaintiff's employment at that time. (*Id.*) Instead of helping Plaintiff, DeChavez and Rogers told him that he "could not read an EKG" and that he lacked leadership skills. (*Id.* ¶ 21.)

On June 14, 2021, Plaintiff was forced to go on medical leave due to neck pain, which was worsened by his stress and anxiety. (*Id.* ¶ 36.) Because his medical leave would not be short term, Plaintiff requested that he be designated as "leave without pay." (*Id.* ¶ 37.) Upon information and belief, other non-Black and non-African employees had been designated as being on leave without pay for as long as five years. (*Id.*) This request was denied, even though he was told by Elizabeth Trupia[4] that other employees had been on unpaid leave for years. (*Id.* ¶ 35.) Plaintiff was also denied an opportunity to be transferred to another position as an accommodation, even though other non-Black employees had been given this opportunity. (*Id.* ¶ 41.) On October 17, 2022, Plaintiff's employment was terminated without any accommodation,

---

[3] The Amended Complaint does not describe what role or position Rosemary Rogers held within the Catheter Lab or HHS.

[4] The Amended Complaint also does not describe what role or position Elizabeth Trupia held within the Catheter Lab or HHS.

even though he requested one.  (*Id.* ¶ 38.)  Plaintiff remains unemployed, without medical

insurance coverage, and receives disability payments that are substantially less than his prior

salary.  (*Id.* ¶ 47.)

## II.    Procedural History

On November 20, 2023, Plaintiff initiated this action by filing his initial complaint.

(Doc. 1.)  On February 9, 2024, Defendants moved to dismiss the action.  (Doc. 14.)  On March

22, 2024, Plaintiff filed an opposition brief and separately moved to amend the complaint.

(Docs. 21–22.)  On April 1, 2024, the parties filed a stipulation and proposed order wherein the

parties consented to, among other things, Plaintiff's motion for leave to amend the complaint and

to withdraw Defendants' motion to dismiss.  (Doc. 24.)  On April 2, 2024, I endorsed the

proposed order.  (Doc. 25.)

On April 5, 2024, Plaintiff filed the operative Amended Complaint.  (Am. Compl.)  On

April 25, 2024, Defendants moved to dismiss the Amended Complaint.  (Doc. 36 ("Defs.'

Mem.").)  Plaintiff filed his opposition to Defendants' motion to dismiss on May 22, 2024.

(Doc. 43 (Pl.'s Mem.").)  Defendants filed their reply on June 12, 2024.  (Doc. 46 ("Defs.' Reply

Mem.").)

## III.    Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Accordingly, a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences in the plaintiff's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, that tenet "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

### IV.    Discussion

Plaintiff alleges eight causes of action:  (1) discrimination under 42 U.S.C. § 1981 on the basis of his race and color; (2) a custom, practice, and/or policy claim under 42 U.S.C. § 1983; (3) aiding and abetting discrimination under the NYSHRL on the basis of his race and color; (4) discrimination under the NYSHRL on the basis of his race and color; (5) retaliation under the NYSHRL because of his opposition to Defendants' unlawful employment practices; (6) discrimination under the NYCHRL based on his race and color; (7) retaliation under the NYCHRL for opposing Defendants' discriminatory practices; and (8) a hostile work environment under Section 1983, the NYSHRL, and the NYCHRL because Plaintiff was Black and African.  (Am. Compl. ¶¶ 48–94.)  Plaintiff also requests compensatory and punitive damages, and attorney's fees and costs.

### A. *All Claims Against Bellevue Hospital Center Catheter Lab*

Defendants argue—and Plaintiff concedes—that the Catheter Lab is a non-suable entity because it is "owned and managed" by HHC.  (Defs.' Mem. 6 (quoting Am. Compl. ¶ 8)); Pl.'s Mem. 5.)  I agree.  Because it is a "facility owned and operated by HHC," the Catheter Lab "may not be sued in its independent capacity."  *See Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 288 (S.D.N.Y. 2006) (citations omitted); *Ayala v. Bellevue Hosp.*, No. 94-CV-1551, 1999 WL 637235, at *3 (S.D.N.Y. Aug. 19, 1999) ("[S]ince Bellevue is merely a facility

within the [HHC], it too lacks the capacity to be sued." (citing *Davis v. City of N.Y.* No. 96-CV-2998, 1998 WL 29247, at \*2 (S.D.N.Y. Jan. 26, 1998)).

Therefore, all claims against the Catheter Lab are dismissed.

### B. *Federal Claims Against HHC*

Among Plaintiff's various causes of action, three involve federal claims against HHC: (1) discrimination under Section 1981; (2) custom, practice, and/or policy under Section 1983; and (3) a hostile work environment under Section 1983.  I address each in turn.

### 1.  Section 1981 Discrimination Claim

Plaintiff's first cause of action is a discrimination claim under Section 1981.  Plaintiff alleges that "Defendants intentionally and willfully discriminated against Plaintiff on the basis of his race and color."  (Am. Compl. ¶ 49.)

The first cause of action must be dismissed because "§ 1981 does not provide a separate private right of action against state actors."  *Duplan v. City of N.Y.*, 888 F.3d 612, 621 (2d Cir. 2018).  This is "[b]ecause § 1983 already provides a remedy against state actors," such that "there is no reason to infer from the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy."  *Id.* at 620–21.  Plaintiff alleges that HHC "is a hospital duly existing pursuant to, and by virtue of the laws of the State of New York," and that HHC "is controlled by the State of New York."  (Am. Compl. ¶ 7.)  Because HHC is a state actor, Plaintiff's Section 1981 claim cannot survive.

Accordingly, Defendants' motion to dismiss Plaintiff's first cause of action is GRANTED.

### 2.  Custom, Practice and/or Policy Section 1983 Claim

Plaintiff's second cause of action is a claim that Defendants "maintained a custom, practice, and/or policy of punishing Black and/or African employees who spoke out against discrimination and retaliatory practices." (Am. Compl. ¶ 57.)  Notably, Plaintiff alleges that the Catheter Lab orientation process involved a "policy and practice" of racial discrimination. (*Id.* ¶¶ 24, 29.)

### a.  Applicable Law

Section 1983 allows a claim against a "person who, under color of [law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  To state a claim under Section 1983 against a municipality, like HHC, a plaintiff must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).  This kind of claim is referred to as a *Monell* claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  In order to establish the existence of a *Monell* claim, Plaintiff must (1) "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused the plaintiff's injuries beyond merely employing the misbehaving officer," and (2) "establish a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Lu v. Hermans*, No. 24-CV-01023, 2024 WL 4712353, at *5 (S.D.N.Y. Nov. 7, 2024) (internal quotation marks omitted and alterations adopted).  "For an unofficial policy or custom to invite *Monell* liability, the practice, custom or usage must be so widespread and so persistent that it has the force of law." *Id.* (citation omitted).  The municipality must have been the "moving force behind the alleged

injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks omitted).

"[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). However,

> such acts would justify liability of a municipality if, for example, they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Id.*

### b.    Application

Plaintiff does not adequately plead a *Monell* violation because he fails to establish the presence of either an unlawful official policy or an unofficial policy or custom. Akoma does not present any non-conclusory allegations that any of the employees mentioned or at least referenced in the Amended Complaint had final policymaking authority. "Only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (internal quotation marks omitted). Plaintiff claims that Defendants had a discriminatory policy and practice related to the orientation process. (Am. Compl. ¶ 24.) Although Plaintiff identifies preceptors Olga and Sonia as having ignored Cekeina Barttell, another Black employee, and Plaintiff, respectively, (*see, e.g.*, Am. Compl. ¶¶ 24–29), there are insufficient factual allegations suggesting that they had actual policymaking authority or that they were acting pursuant to a policy or custom. Plaintiff's allegations that an Asian nurse Rodney "received preferential treatment" over Barttell, (*id.* ¶ 34), are also devoid of additional details about what that preferential treatment was, and what policy

10

or custom led to that preferential treatment.

Plaintiff also claims that he did not receive his lead suit because of Defendants' policies, customs and procedures of racial discrimination.  (*Id.* ¶ 32.)  Again, there are almost no actual factual allegations suggesting who these policymaking officials are,[5] whether they had the "formal policymaking authority to adopt rules for the conduct of government," *Toussaint*, 2021 WL 4429316, at \*11, or what actions they took during the relevant time period that resulted in Plaintiff not receiving a lead suit.  Plaintiff also claims "on information and belief," that Kenny, another Black nurse, was previously "forced to leave due to harassment and discriminatory conduct" by Defendants.  (*Id.* ¶ 4.)  This allegation is flawed because the Amended Complaint "[m]ust at least contain enough factual allegations that are *not* made upon information and belief to 'raise a right to relief above the speculative level.'"  *Gilford v. NYS Off. Of Mental Health*, No. 17-CV-8033, 2019 WL 1113306, at \*6 (S.D.N.Y. Mar. 11, 2019) (quoting *Twombly*, 550 U.S. at 555) (emphasis in original)).  The Amended Complaint fails to do so.

Finally, the Amended Complaint does not contain sufficient factual assertions to plausibly allege that any policy, unofficial or otherwise, existed, namely that the alleged conduct was so "sufficiently widespread and persistent" as to constitute a custom or policy of which supervisors must have been aware.  Plaintiff fails to "give a factual description of such a policy," and instead makes "just bald allegations that such a thing existed," which is insufficient to state a *Monell* claim.  *Bess v. City of N.Y.*, 11 Civ. 7604, 2013 WL 1164919, at \*2 (S.D.N.Y. Mar. 19,

---

[5] Plaintiff states that DeChavez is an "Administrative Director Nurse" with "authority over several different departments of the Defendant."  (Pl.'s Mem. at 7, 12.)  However, these assertions are not in the Amended Complaint and were only first raised in Plaintiff's opposition brief, and accordingly cannot be considered.  *See Lesser v. TD Bank, N.A.*, No. 18-cv-9922, 2020 WL 1943050, at \*10–11 (S.D.N.Y. Apr. 23, 2020).  Moreover, even if I were to consider Plaintiff's statement, it is not clear what "authority" DeChavez has over these departments.  Indeed, even actual "decisionmaking authority does not equate to policymaking authority." *Toussaint v. City of New York*, No. 19-CV-1239, 2021 WL 4429316, at \*11 (S.D.N.Y. Sept. 27, 2021).  Here, Plaintiff has not established even decisionmaking authority, much less that these individuals "had the formal policymaking authority to adopt rules for the conduct of government." *Id.* (internal quotation marks omitted).

2013).  Furthermore, outside of Defendants' purported discrimination and retaliation against Plaintiff, Akoma only details one other isolated incident of discrimination against Barttell.  (*See* Am. Compl. ¶¶ 24–25, 33–34, 40.)  Otherwise, he simply provides a conclusory observation that, "on information and belief," other Black employees faced discrimination and retaliation.  (*Id.* ¶¶ 16, 33.)  As troubling as these allegations may be, "two instances, or at most three, over a period of several years . . . [falls] far short of showing a policy, custom, or usage."  *Jones*, 691 F.3d at 85; *see also Ayyaz v. City of New York*, No. 19-CV-1412, 2021 WL 1225684, at \*3 (S.D.N.Y. Mar. 31, 2021) (denying a Monell claim where plaintiff only alleged "sexual harassment or discrimination incidents . . . involving herself" and two defendants); *White v. City of New York*, 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016) (finding six incidents over five years insufficient to plausibly allege the existence of a municipal policy).  Plaintiff has not shown that these practices are so widespread as to constitute an unofficial policy or custom.  Nor does the amended complaint allege factual assertions that support a claim that there was a deliberate failure to train or supervise employees, constituting an unofficial policy of discrimination.

Accordingly, Defendants' motion to dismiss Plaintiff's second cause of action is GRANTED and the claim is dismissed.

### 3.  Section 1983 Hostile Work Environment Claim

Plaintiff's final federal claim alleges a hostile work environment under Section 1983. Plaintiff claims that Defendants' "orientation process was part of a hostile environment" of racial discrimination.  (Am. Compl. ¶ 29.)  Plaintiff also alleges that he was "disciplined on occasions" when non-Black employees were not, (*id.* ¶ 92), and that he did not receive a lead suit as protective gear, "which was a reckless disregard of his safety by the Defendants," (*id.* ¶ 93).

To plead a claim for a hostile work environment under Section 1983, a plaintiff "must first produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 68 (2d Cir. 2023) (internal quotation marks omitted).  In the first part of this inquiry, to plead an abusive working environment, a plaintiff must satisfy "both objective and subjective components:  the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 321 (2d Cir. 2015) (internal quotation marks omitted).  This requires that the incidents be "more than episodic." *Id.*  A court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted).  "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation omitted).  "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe.  They are not intended to promote or enforce civility, gentility or even decency." *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (internal quotation marks omitted).  With regard to the second part of the inquiry, a plaintiff must plausibly allege "that the hostile work environment was caused by animus towards her as a result of her membership in a protected class." *Id.* at 578 (internal quotation marks omitted).  "It is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*,

No. 11-CV-3154, 2013 WL 6667531, at \*11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (alterations adopted)); *see also Rogers v. Fashion Inst. of Tech.*, No. 14-CV-6420, 2016 WL 889590, at \*8 (S.D.N.Y. Feb. 26, 2016) ("Plaintiff must plausibly allege a basis to infer that Defendants took these unfavorable actions against him because of his race.").

Plaintiff fails both parts of the inquiry, and I therefore dismiss his hostile work environment claim brought under Section 1983.  First, Plaintiff fails to show the existence of an abusive working environment because he only identifies three episodic incidents related to orientation, his being written up, and the lead suit.  Plaintiff fails to show any "discriminatory intimidation, ridicule, and insult," let alone one that is so "severe or pervasive to alter the conditions of his employment."  *Williams*, 61 F.4th at 68 (internal quotation marks omitted).  Second, even if Plaintiff could show an abusive working environment, he fails to plausibly allege that the hostile work environment was based on discriminatory animus towards Plaintiff because of his membership in a protected class, outside of simple conclusory statements in the Amended Complaint.  *Jackson v. N.Y.S. Dep't of Labor*, No. 09-CV-6608, 2012 WL 843631, at \*4 (S.D.N.Y. Mar. 12, 2012) (dismissing plaintiff's race-based hostile work environment claim where she failed to plead facts permitting the inference that the contested actions were linked to her membership in a protected class); *Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*, No. 09-CV-5962, 2010 WL 3958852, at \*6 (S.D.N.Y. Sept. 16, 2010) (same).  Therefore, Defendants' motion to dismiss Plaintiff's Section 1983 hostile work environment claim is GRANTED.

14

### C. *State Law Claims Against HHC*

Plaintiff also brings various state and city law claims under the NYSHRL and the NYCHRL predicated on "supplemental jurisdiction" based on his federal law claims. (Am. Compl. ¶ 4.) Supplemental jurisdiction exists over state law claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In other words, federal courts may assert supplemental jurisdiction over claims that "derive from a common nucleus of operative fact." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (internal quotation marks omitted).

Because I have dismissed Plaintiff's federal claims, I must now decide whether to exercise supplemental jurisdiction over his state and city claims. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although this is not "a mandatory rule to be applied inflexibly in all cases, . . . in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also In re Merrill Lynch Limited Partnerships Litigation*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (concluding that district court properly declined to exercise supplemental jurisdiction over state law claims when all federal claims had been dismissed); *Ferrara v. Metro. Transp. Auth.*, No. 24-CV-9161, 2026 WL 351084, at *7 (S.D.N.Y. Feb. 9, 2026) (declining to exercise supplemental jurisdiction over state law claims after federal discrimination and retaliation claims under the Americans with Disabilities Act and Rehabilitation Act were dismissed).

I see no reason to depart from this principle.  Accordingly, I decline to exercise supplemental jurisdiction over Plaintiff's state and city law claims, and they are dismissed without prejudice to refiling in state court.

### D.  *Request for Punitive Damages*

Plaintiff requests punitive damages, alleging that "Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law."  (Am. Compl. ¶ 97.) Defendants state that Plaintiff failed to respond to Defendants' argument that HHC is immune to punitive damages in a civil action because it is a public-benefit corporation, and thus a municipal corporation.  (Defs.' Reply Mem. 1.)

Because Plaintiff has failed to address Defendants' arguments related to punitive damages, I consider those claims abandoned.  *See Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal Courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim."); *Youmans v. Schriro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute[s] an abandonment of those claims.").

Regardless, "punitive damages against HHC are not available" in this case.  *Johnson v. N.Y.C. Health & Hosps. Corp.*, No. 98-CV-5505, 2000 WL 1059700, at *3 (S.D.N.Y. Aug. 2, 2000).  This is because HHS, as a public-benefit corporation, "is held to municipal liability standards," and it is "well settled that punitive damages are unavailable against municipalities in actions under Title VII and §§ 1981 and 1983."  *Id.*

### E.  *Motion for Leave to Amend the Complaint*

Plaintiff seeks, in the alternative, leave to file another amended complaint under Rule 15 of the Federal Rules of Civil Procedure.  (Pl.'s Mem. 14, 16.)  Plaintiff makes conclusory arguments that "[t]here is no issue of undue delay or prejudice and an amendment would not be futile."  (*Id.* at 16.)  In response, Defendants argue that Plaintiff has failed to either identify additional or different factual allegations he would make in a second amended complaint or attach a copy of the proposed second amended complaint to his opposition brief, as required under Local Rule 15.1.  (Defs.' Reply Mem. 10.)

Defendants are correct.  Plaintiff has failed to identify how he would cure any pleading deficiencies.  *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (affirming denial of leave to amend after plaintiff failed to "advise the district court how the complaint's defects would be cured").  Moreover, Plaintiff has been on notice as to the various deficiencies in his pleadings.  *Akyar v. TD Bank US Holding Co.*, No. 18-CV-379, 2018 WL 4356734, at *6 (S.D.N.Y. Sept. 12, 2018) ("Plaintiff's failure to fix the deficiencies contained in his initial complaint, after being provided ample notice of them, is sufficient ground to deny leave to amend."(internal quotation marks omitted)).  Before Plaintiff filed the Amended Complaint on April 5, 2024, Plaintiff had already had the opportunity to review Defendants' motion to dismiss the original complaint filed on February 9, 2024 and even filed an opposition brief on March 22, 2024.  Plaintiff had the opportunity to cure his pleading deficiencies in the Amended Complaint; he will not get another by filing a second amended complaint.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (denying leave to amend when "Plaintiff already amended its complaint once following Defendant's first motion to dismiss for failure to state a claim," "failed to resolve its pleading deficiencies in its First

17

Amended Complaint," and "has entirely failed to specify how it could cure its pleading deficiencies.").

Accordingly, Plaintiff's request for leave to amend is DENIED.

## V.   Conclusion

For these reasons, Defendants' motion to dismiss is GRANTED as to Plaintiff's federal claims against all Defendants and GRANTED as to all of Plaintiff's claims against Defendant Catheter Lab, and these claims are dismissed with prejudice.  Plaintiff's state law claims against Defendant HHC are dismissed without prejudice to refiling in state court.  The Clerk of Court is respectfully directed to terminate the motion pending at Document 36 and close this case.

SO ORDERED.

Dated:      March 30, 2026
            New York, New York

Vernon S. Broderick
United States District Judge